UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TIA D.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00685-MJD-JPH |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

Claimant Tia D. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I.   Background**

Claimant applied for DIB and SSI in November 2018, alleging an onset of disability as of October 1, 2018. [Dkt. 8-2 at 16.] Claimant's applications were denied initially and again upon

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

reconsideration, and a hearing was held before Administrative Law Judge Teresa A. Kroenecke ("ALJ") on September 14, 2020. [Dkt. 8-3 at 2.] On December 7, 2020, ALJ Kroenecke issued her determination that Claimant was not disabled. [Dkt. 8-5 at 2.] The Appeals Council then remanded the case to ALJ Kroenecke, explaining that

> the hearing decision does not contain sufficient rationale with specific references to evidence of record in support of the assessed assistive device limitation. . . . In addition, the decision does not provide a rationale for why a cane is necessary for ambulation but not for standing/balancing (Decision, pages 22-26). The Appeals Council also notes the residual functional capacity contains otherwise mirror limitations on standing and walking up to 30-45 minutes at a time and up to 2 hours per workday for each (Finding 5). Further consideration of the claimant's residual functional capacity, including the medical necessity of assistive device(s) and when these device(s) are needed, consistent with Social Security Ruling 96-9p is warranted.

[Dkt. 8-5 at 40.] Thus, the Appeals Council concluded that upon remand, ALJ Kroenecke should

> [g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945; Social Security Ruling 96-9p; and Social Security Ruling 85-16 and 96-8p).

*Id.* at 41.

A second hearing was held before ALJ Kroenecke on August 3, 2021. [Dkt. 8-2 at 35.] On September 27, 2021, ALJ Kroenecke issued her determination that Claimant was not disabled. [Dkt. 8-2 at 13.] The Appeals Council then denied Claimant's request for review in February 2022. *Id.* at 2. Claimant timely filed her Complaint on April 6, 2022, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, she "must provide a 'logical bridge' between the evidence and [her] conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III.  ALJ Decision

ALJ Kroenecke first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of October 1, 2018. [Dkt. 8-2 at 16.] At step two, the ALJ found that Claimant had the following severe impairments: "multiple fractures involving the right lower extremity and right clavicle; post-traumatic complications including Achilles contracture, plantar fibroma, tibiotalar arthritis, and complex regional pain syndrome of the right lower extremity; and obesity." *Id*. at 18-19. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 20-

21. ALJ Kroenecke then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> [t]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; no exposure to extreme heat, extreme cold, humidity, wetness, vibrations, or hazards such as unprotected heights or dangerous machinery; no use of foot controls with the right lower extremity; and only occasional, concentrated exposure to pulmonary irritants such as dusts, odors, gases, and fumes.

*Id.* at 22.

At step four, the ALJ found that Claimant was not able to perform her past relevant work during the relevant time period. *Id*. at 26. At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as poll clerk (DOT 205.367-030), address clerk (DOT 209.587-010), and document preparer (DOT 249.587-018). *Id*. at 27. Accordingly, ALJ Kroenecke concluded Claimant was not disabled. *Id.* at 27.

### IV.  Discussion

Claimant argues that the ALJ erred: (1) by improperly discrediting her testimony about her symptoms under SSR6 16-3p by failing to account for the unique presentation of pain caused by Complex Regional Pain Syndrome ("CRPS") as set forth in SSR 03-2p; (2) by failing to discuss the need for leg elevation as part of the RFC finding; and (3) by failing to assess an ambulatory device limitation in the RFC assessment. The Court will consider the arguments in turn.

**A.  The ALJ's Analysis of Claimant's Subjective Symptoms**

Claimant argues that the ALJ erred in evaluating her subjective symptoms when the ALJ concluded that Claimant's "allegations of significant physical limitations are not entirely

5

consistent with her course of treatment and statements to medical providers." [Dkt. 8-2 at 25.] Claimant first asserts that the ALJ ignored SSR 03-2p concerning CRPS, noting that the ALJ did not cite SSR 03-2p in the decision denying benefits, [Dkt. 12 at 21], and contends that the ALJ improperly discredited Claimant's statements about the intensity, persistence, and limiting effects of her symptoms because the ALJ failed to account for the nature of CRPS and how it manifests itself. *Id.* at 21-22. Second, Claimant contends that the ALJ's subjective symptoms finding was also contrary to SSR 16-3p, which addresses how to evaluate an individual's stated symptoms. *Id.* at 23-24. Claimant argues that while the ALJ "included some of the obligatory language regarding the required elements of 16-3p . . . [t]he ALJ mischaracterizes the evidence." *Id.* at 12.

An ALJ's subjective symptom analysis is given special deference so long as the ALJ explains his or her reasoning and it is supported by the record. *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). A reviewing court will only overturn an ALJ's subjective symptom analysis if it is "patently wrong." *Id.*

SSR16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates "the use of the term 'credibility'" from the evaluation process, and the SSA clarified that "subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." *Id.* at *1. SSR 16-3p instructs ALJs to use the following method to evaluate statements regarding the intensity, persistence, and limiting effects of symptoms:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable

> impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult.

Id. at *2. Thus, ALJs use a two-step evaluation of an individual's subjective symptoms. First, an ALJ "must determine whether a claimant has a medically determinable impairment that could reasonably be expected to produce an individual's symptoms." See SSR 16-3p. If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves the second step, in which the ALJ "must consider all of the evidence in the record to determine the intensity, persistence, and limiting effects of the claimant's symptoms." Id. To conduct this analysis at the second step, SSR 16-3p instructs as follows:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; and individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2016 WL 1119029, at *4.

The Seventh Circuit has cautioned that an ALJ "cannot disbelieve [a claimant's] testimony solely because it seems in excess of the 'objective' medical testimony." Johnson v. Barnhart, 449 F.3d 804, 806 (7th Cir. 2006). That is so because "[t]he etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be 'read off' from a medical report." Id.

SSR 03-2p provides further guidance by explaining the Commissioner's policies for evaluating CRPS symptoms. SSR 03-2p, available at 2003 WL 22399117. CRPS "describe[s] a constellation of symptoms and signs that may occur following an injury to bone or soft tissue. The precipitating injury may be so minor that the individual does not even recall sustaining an

injury." *Id.* at *1. Relevant here, SSR 03-2p instructs that CRPS often produces a degree of pain that is "out of proportion to the severity of the precipitating injury." *Id.* at *2. "In other words, a claimant who experiences this condition will often not have the sort of objective clinical findings that would normally be expected to produce the amount of pain the individual is reporting." *Mark L. v. Saul*, 2019 WL 2560099, at *3 (N.D. Ind. June 21, 2019).

In addition, "the symptoms associated with this condition are often transitory—they 'may be present at one examination and not appear at another.'" *Id.* (quoting SSR 03-2p). Indeed, SSR 03-2p notes that "conflicting evidence in the medical record is not unusual in cases of [CRPS] due to the transitory nature of its objective findings and the complicated diagnostic process involved." Therefore, "while ALJs often point to evidence of inconsistencies in the record as an indication a condition is not as severe as a claimant says, that same reasoning might not apply when a claimant has [CRPS], as to which such contradictions are common." *Mark L.*, 2019 WL 2560099, at *3. "Because ... [CRPS] often produce[s] pain and other symptoms out of proportion to the 'objective' medical evidence, it is crucial that the disability adjudicator evaluate credibility with great care and a proper understanding of the disease[]." *Johnson v. Colvin*, 2014 WL 2765701, at *1 (E.D. Wis. June 18, 2014).

The ALJ concluded that Claimant's impairments, including her CRPS, could reasonably be expected to cause the alleged symptoms. [Dkt. 8-2 at 23.] However, the ALJ concluded that her symptoms and limitations were not as severe as she claimed. *Id.* It is troubling that the ALJ's decision did not cite to SSR 03-2p. *See, e.g., Beebe v. Saul*, 2019 WL 5616952 (W.D. Wis. Oct. 31, 2019) (noting that the ALJ "failed to cite or consider SSR 03-2p," and while this failure alone may not qualify as reversible error, SSR 03-2p "does address several of the concerns that the [ALJ] raised in her decision concerning inconsistencies in plaintiff's reports and the medical

8

record"). Even more troubling is that the ALJ's opinion does not reflect an awareness of the characteristics of CRPS discussed in SSR 03-2p.

In fact, the ALJ discounted Claimant's alleged symptoms and limitations in part for reasons that appear inconsistent with the issues discussed in SSR 03-2p. For example, the ALJ discounted Claimant's symptoms because "the record shows that treatment was somewhat effective at improving the [C]laimant's symptoms for a period," pointing to a spinal cord stimulator trial in late 2019 and noting that Claimant "did not seek any additional treatment until" June 2020. [Dkt. 8-2 at 24.] The ALJ further notes, repeatedly, that "the claimant's pain improved enough for her to be able to ambulate without any [documented use of] assistive devices for much of the alleged period of disability." [Dkt. 8-2 at 25.] As discussed in SSR 03-2p, these perceived inconsistencies might not be contrary to Claimant's testimony regarding her pain. The ALJ did not evaluate Claimant's statements through the prism of SSR 03-2p, and this omission resulted in a symptom analysis that was patently wrong. Because the ALJ found Claimant's CRPS to be a severe impairment, the ALJ's failure to consider the limitations and presentation of CRPS is not harmless error.

For these reasons, the decision of the ALJ must be reversed and remanded for further consideration of Claimant's subjective symptoms. On remand, the ALJ should review SSR 03-2p and consider its relevance to plaintiff's symptoms and limitations. With SSR 03-2p as guidance, the ALJ should further reevaluate Claimant's subjective symptom allegations in accordance with SSR 16-3p. Lastly, through the lens of SSR 03-2p, the ALJ should evaluate whether Claimant's pain impacts her concentration and cognition such that a limitation should be included in the RFC.

9

### B. Leg Elevation

Claimant next contends that the ALJ's RFC finding failed to account for her need to elevate her legs throughout the day. She notes that, other than noting Claimant's hearing testimony that she elevates her leg throughout the day, the ALJ ignored evidence, including objective medical evidence, that Claimant needs to elevate her leg. [Dkt. 12 at 19.]

An ALJ must explain his or her reasoning to build the "logical bridge" connecting the evidence to the ALJ's decision. *See Smith v. Astrue*, 467 F. App'x 507, 510 (7th Cir. 2012). Here, the ALJ did not explain why she concluded that Claimant does not need to elevate her leg. Claimant testified that she elevates her leg throughout the day, including during sleep, and has to ice her foot frequently. [Dkt. 8-2 at 49-50.] Claimant has been instructed by various treating physicians to elevate her right foot to help control her pain and swelling. [Dkt. 8-15 at 67, Dkt. 8-24 at 15, Dkt. 8-27 at 12.] Further, subjective reports and medical records document edema or swelling in her right lower extremity. [Dkt. 8-22 at 14, Dkt. 8-23 at 8, 16, Dkt. 8-25 at 29, 34, 39, Dkt. 8-27 at 8, 28, Dkt. 8-32 at 11.] The ALJ failed to acknowledge the medical evidence at all, failed to discuss why she discounted Claimant's hearing testimony regarding the need to elevate her leg, and failed to explain why she did not assess a leg elevation limitation in the RFC assessment. The ALJ erred in omitting such a discussion. *See Smith*, 467 F. App'x at 510 (remanding because of "the perfunctory nature of the ALJ's discussion of leg elevation"); *Deseray B. v. Saul*, 2019 WL 2635893, at *7 (S.D. Ind. June 26, 2019) (remanding where "[n]o explanation is provided as to why or the extent to which the Plaintiff's testimony about leg elevation is not credible, an undertaking which is required in this Circuit"). This was a critical, and reversible, omission in light of the fact that the VE testified that Claimant's need to elevate her leg to higher than waist height would preclude the sedentary jobs identified. [Dkt. 8-2 at 55.]

On remand, the ALJ should evaluate the medical evidence and assess the credibility of Claimant's testimony regarding leg elevation, and if the ALJ finds that no leg elevation limitation is supported by the record, the ALJ should explain how she arrived at such a conclusion.

### C. Ambulatory Device

Finally, Claimant argues that the ALJ erred in her consideration of Claimant's need for an ambulatory device in arriving at her RFC assessment. The ALJ stated that

> I conclude the claimant has not established a documented medical need for the use of a cane or other assistive device on a regular and continuing basis. While the claimant alleged a need for the use of an assistive device and the record documents some use of one after surgery, the objective evidence shows that the claimant generally displays no documented use of an assistive device following post-operative recovery. In addition, the record does not document that a treating medical source prescribed a cane or other assistive device for permanent use. Therefore, I have not incorporated an assistive device into the residual functional capacity.

[Dkt. 8-2 at 25] (citations omitted). While the ALJ is correct that Claimant could not demonstrate a documented medical need for the use of a cane or other assistive device on a regular and continuing basis for more than twelve months, the ALJ's failure to include the need for an assistive device in her RFC is not substantially supported by the medical evidence and other testimony.

The ALJ seems to conflate the Listing requirements with what is required to assess an RFC limitation. Under Listing 1.00C6a, the phrase "documented medical need," means there is evidence from a medical source that supports the claimant's medical need for an assistive device for a continuous period of at least twelve months and does not require a specific prescription for the assistive device. Listing 1.00C6a. However, in assessing the claimant's RFC, the ALJ merely must "incorporate all of the claimant's limitations supported by the medical record." *Crump v.*

*Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (*citing Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015)).

Here, Claimant's inability to document a continuous twelve-month medical need for an assistive device nor a prescription for such a device does not preclude the ALJ considering Claimant's need for an ambulatory device in arriving at her RFC assessment. In fact, the medical record supports that Claimant frequently relied on an assistive device to ambulate, and when she did not, she walked with compensatory strategies and/or a severely deficient gait. [Dkt. 12 at 15-16] (collecting record cites). While Claimant's pain sporadically improved enough for her to be able to ambulate without any assistive devices at some of her doctor visits, the ALJ did not explain how such temporary improvements equated to an ability to return to the workforce without any need for an assistive device. *See Sanders v. Berryhill*, 2018 WL 3533312, at *5-6 (N.D. Ill. July 23, 2018) (finding that engaging in minimal activities and responding positively to medication do not equate to the ability to enter the workforce).

On remand, the ALJ should evaluate whether an assistive device limitation should be included in the RFC assessment using the correct standard as set forth above and explain her conclusion.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated: 20 APR 2023

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.